UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL FLOURNOY,

                           Petitioner,

    -against-

WILLIAM BROWN, Superintendent of Eastern
Correctional Facility,

                           Respondent.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-2338 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Michael Flournoy brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his state convictions in 1997 for attempted murder, assault, and criminal possession of a weapon. He asserts three claims: (1) that the trial court improperly permitted the introduction of inadmissible hearsay testimony, in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment; (2) that the trial court improperly restricted his cross-examination of witnesses, in violation of the Confrontation Clause of the Sixth Amendment; and (3) that he received ineffective assistance of counsel, in violation of the Sixth Amendment, because his trial attorney failed to move to suppress a lineup identification that had been conducted in violation of Flournoy's New York State right to counsel. For the reasons set forth below, Flournoy's Petition is DENIED.

I.    **BACKGROUND**

Flournoy was convicted based on a shooting that took place in Kings County, New York, on the night of September 23, 1996.[1] (See Addendum to Habeas Pet. (Docket Entry # 1) ("Pet.")

---

[1] The facts of the shooting are drawn from Flournoy's description of the evidence the prosecution presented at trial, as set forth in his Petition.

1

¶ 3.) Four witnesses connected Flournoy to the crime: Ronald Ashby, Monique Ashby (Ronald Ashby's wife), Ronald Smith (Ronald Ashby's father), and Shameeka Coleman (Monique Ashby's sister and Ronald Smith's live-in girlfriend). (Id. ¶ 5.) The court will refer to these four witnesses as "Ashby," "Monique," "Smith," and "Coleman," respectively.

On the afternoon of September 23, 1996, Ashby shot a friend of Flournoy's named Shawn Howard (a.k.a. "Shawniebird"). (Id. ¶ 4.) Ashby discarded his gun and drove to 318 Franklin Avenue in Brooklyn where Smith and Coleman lived together. (Id. ¶ 6.) Monique was also at the apartment when Ashby arrived. (Id.) Ashby told Monique to call a cab to take the two of them home. (Id.) When the cab arrived, Ashby and Monique left the apartment and got into the back seat. (Id. ¶ 7.)

Smith and Coleman watched from their apartment window as the cab drove off, and saw a black station wagon that had been parked across the street start up and drive behind the cab. (Id. ¶ 8.) They claimed that they saw Flournoy look up at their apartment from the front passenger seat of the station wagon. (Id. ¶ 9.) The station wagon followed the cab to the corner of Franklin Avenue and Lexington Avenue, where the cab stopped at a red light. (Id. ¶ 10.) While waiting in the cab at the red light, Monique and Ashby saw the station wagon pull up behind them. (Id. ¶¶ 13-14.)

According to Smith and Ashby, Flournoy then exited the station wagon and walked to the rear driver's side of the cab, while another person—later identified as Flournoy's co-defendant, David Herion—walked to the passenger's side of the cab.[2] (Id. ¶¶ 12, 14.) Each had a gun and opened fire into the back seat of the cab where Ashby and Monique were sitting. (Id.) Ashby jumped on Monique and pushed her down. (Id. ¶ 13.) Panicked, Monique pushed Ashby off of

---

[2] Coleman testified that she saw three men exit the station wagon. (Pet. ¶ 12.)

2

her, sat up, and saw Flournoy and Herion firing their weapons. (Id.) Ashby sustained a non-serious gunshot wound to his back, Monique escaped injury, and Carolyn Jones, a bystander, was struck with a bullet on the left side of her head.[3] (Id. ¶¶ 14-15.)

Detective Nadine Mosely was assigned to the case. (Id. ¶ 16.) Detective Mosely interviewed Ashby at Brooklyn Hospital, where he had been taken for treatment. (Id. ¶ 17.) Later, Detective Mosely transported Ashby and Monique to the 79th Precinct Police, and, shortly thereafter, Smith and Coleman arrived. (Id. ¶ 18.) Smith identified Flournoy as one of the shooters and provided a description of Flournoy to Detective Mosely. (Id.)

Flournoy was arrested on November 7, 1996. (Id. ¶ 20.) He was brought to the 79th Precinct, where he was joined by counsel. (Id.) Early the next morning, Flournoy was placed in a lineup in the absence of his attorney. (Id.) Monique viewed the lineup and identified Flournoy as one of the shooters. (Id.)

Flournoy and Herion were indicted in New York State Supreme Court, Kings County, for two counts of second-degree attempted murder, two counts of first-degree attempted assault, three counts of first-degree assault, two counts of second-degree assault, two counts of third-degree assault, one count of second-degree criminal possession of a weapon, one count of third-degree criminal possession of a weapon, and one count of first-degree reckless endangerment. (Mintz Aff. (Docket Entry # 10) ¶ 6.)

A jury trial was held on Flournoy's and Herion's charges jointly. (Trial Tr.) Smith, Monique, Ashby, and Coleman identified Flournoy and Herion as the shooters. (See id. at 487-48, 518, 547-48, 551-52, 585 (Smith); id. at 672-75, 721-23, 741-42, 776-77, 787-90 (Monique); id. at 986-89, 1012-13, 1062, 1096-97 (Ashby); id. at 1178-79, 1183-84, 1223, 1245-47, 1249-50, 1268-69 (Coleman).) The prosecution introduced no physical evidence

---

[3] At the time of the trial, Jones had no recollection of the event. (Pet. ¶ 15.)

linking Flournoy to the crime. Flournoy made no incriminating statements and did not testify.

On May 28, 1997, the jury convicted Flournoy of two counts of attempted second-degree murder, two counts of first-degree assault, one count of second-degree assault, and one count of second-degree criminal possession of a weapon. (Id. at 1525-26, 1528-32.) On July 3, 1997, Flournoy was sentenced to consecutive terms of imprisonment of ten to twenty years for each attempted second-degree murder conviction and seven and a half to fifteen years for the first-degree assault conviction related to Jones. (Mintz Aff. ¶ 8.) These sentences were ordered to run concurrently with terms of seven and a half to fifteen years for (1) the first-degree assault conviction relating to Ashby and (2) the second-degree weapon possession conviction. (Id.)

Prior to perfecting a direct appeal of his conviction, Flournoy moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Id. ¶ 9.) He argued: (1) that he was denied his New York State right to counsel at the November 8, 1996, pre-arraignment lineup after informing the police officers that he was represented by counsel; (2) that trial counsel provided ineffective assistance by refusing to appear at the lineup after being called to do so; and (3) that counsel provided ineffective assistance by failing to investigate and call four alibi witnesses as trial witnesses. (Id.) On April 18, 2002, the court denied Flournoy's motion. (Ex. 1 to Mintz Ltr. of June 22, 2010 (Docket Entry # 17-2) ("Mintz Ex."), at 5 (Apr. 18, 2002, N.Y. Sup. Ct. Decision & Order).) The court concluded that the issues relating to Flournoy's right to counsel at the lineup could be "found in the trial record" and thus "should not be decided at a post conviction proceeding rather than a direct appeal." (Id. at 3-4.) The court also rejected Flournoy's contention that his attorney provided ineffective assistance by failing to pursue an alibi defense. (Id. at 4-5.) The New York Supreme Court Appellate Division, Second Department, denied

4

Flournoy leave to appeal the denial of his motion to vacate. (Id. at 7 (Aug. 7, 2002, N.Y. App. Div. Decision & Order on Appl.).)

On October 1, 2002, Flournoy perfected the appeal of his judgment of conviction to the Appellate Division. (Mintz Aff. ¶ 13.) He argued: (1) that he was denied his right to counsel at the pre-arraignment lineup; (2) that the testimony of Detective Mosely recounting his interview with Ronald Smith constituted inadmissible hearsay that bolstered Smith's pretrial statements; and (3) that the trial court impermissibly restricted Flournoy's cross-examinations of witnesses. (Id.) On March 31, 2003, the Appellate Division affirmed Flournoy's convictions. People v. Flournoy, 303 A.D.2d 762 (N.Y. App. Div. 2003). It held: (1) that the record was insufficient to review Flournoy's right to counsel claim; (2) that Detective Mosely's testimony "was properly admitted as background information to explain the events that led to the defendant's arrest"; and (3) that "defendant's remaining contentions [we]re either unpreserved for appellate review or without merit." Id. On September 10, 2003, the Chief Judge of the New York Court of Appeals denied Flournoy's request for leave to appeal the Appellate Division's order. People v. Flournoy, 100 N.Y.2d 620 (2003).

On September 16, 2004, Flournoy filed a second motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Mintz Aff. ¶ 16.) He again asserted that he was denied his state right to counsel at the pre-arraignment lineup and that his trial counsel was ineffective for failing to move to suppress Monique's in-court and lineup identifications. (Id.) The court denied Flournoy's motion to vacate, reasoning that the state right to counsel required only that Flournoy's attorney be *notified* of the impending lineup, and that there was no dispute that he was so notified. (Mintz Ex. at 11-12 (Oct. 6, 2006, N.Y. Sup. Ct. Decision & Order).) Flournoy was granted leave to appeal the Supreme Court's denial of his

motion to vacate. (Id. at 14 (N.Y. App. Div. Nov. 2, 2006, Decision, Order & Certificate Granting Leave to Appeal on Appl.).) On November 18, 2008, the Appellate Division affirmed the denial of Flournoy's motion to vacate. People v. Flournoy, 56 A.D.3d 683 (N.Y. App. Div. 2008). The court concluded that, although Flournoy had been deprived of his right to counsel at the lineup, the error was harmless because "[t]he evidence of the defendant's guilt, without reference to the lineup identification, was overwhelming, and there [wa]s no reasonable possibility that the error might have contributed to the defendant's conviction." Id. The court also concluded that "defendant was not denied the effective assistance of counsel." Id. Flournoy's application to the New York Court of Appeals for leave to appeal the Appellate Division's decision was denied. People v. Flournoy, 12 N.Y.3d 783 (2009).

On May 22, 2009, Flournoy filed the instant pro se Petition for Writ of Habeas Corpus.[4] He asserts three claims: (1) that the trial court improperly permitted the introduction of inadmissible hearsay testimony from Detective Mosely, in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment; (2) that the trial court improperly restricted his cross-examination of witnesses, in violation of the Confrontation Clause of the Sixth Amendment; and (3) that he received ineffective assistance of counsel, in violation of the Sixth Amendment, because his trial attorney failed to move to suppress Monique's lineup identification. (Pet. ¶ 2.)

On November 28, 2011, Magistrate Judge Lois Bloom issued a Report and Recommendation ("R&R") recommending that Flournoy's Petition be denied. (Docket Entry # 20.) Flournoy filed written objections to the R&R on January 25, 2012. (Docket Entry # 25.)

---

[4] At the time he filed his Petition, Flournoy was incarcerated at Eastern Correctional Facility. (Mintz Aff. ¶ 24.)

## II. STANDARD OF REVIEW

A district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established a deferential standard of review that federal courts must apply when reviewing a claim in a habeas corpus petition that was adjudicated on the merits in state court proceedings. AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5]

Id. § 2254(d) (emphasis added); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005); see also Greene v. Fisher, 132 S. Ct. 38, 44 (2011) (explaining that § 2254(d) review must be based on the Supreme Court's "precedents as of the time the state court renders its decision" and "the record that was before the state court" at that time (internal quotation marks and emphasis omitted)). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

---

[5] Flournoy relies upon § 2254(d)(1) alone as the basis for his Petition, and does not make reference to § 2254(d)(2). (See, e.g., Pet. Reply (Docket Entry # 15) at 4.)

[the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

## III. DISCUSSION

### A. Restriction of Cross-Examination

Flournoy argues that the trial court improperly restricted his cross-examination of witnesses, in violation of the Confrontation Clause of the Sixth Amendment. (Pet. ¶ 2.) The Appellate Division concluded that this claim was "either unpreserved for appellate review or without merit." Flournoy, 303 A.D.2d at 762. Under Second Circuit precedent, this language constitutes an adjudication of Flournoy's claim on the merits for the purposes of habeas review; thus, the court applies AEDPA's deferential standard of review to the claim. See Ryan, 303 F.3d at 245-46. For the reasons that follow, the Appellate Division's determination was not contrary to, or an unreasonable application of, clearly established Federal law.[6]

---

[6] The court considers Flournoy's right of confrontation as it existed at the time of the Appellate Division's decision in 2003. See Greene, 132 S. Ct. at 44; Howard, 406 F.3d 114, 122. The Confrontation Clause has been recently interpreted by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), and Davis v. Washington, 547 U.S. 813 (2006). But because both of these decisions occurred after the Appellate Division's decision, they will not be applied to Flournoy's Petition. Flournoy does not contend that he is entitled to benefit from Crawford or Davis.

8

The Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."[7] U.S. Const. amend VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-16 (1974). But "the right of cross-examination is not absolute." Howard, 406 F.3d at 129. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Thus, "trial judges retain wide latitude . . . to impose reasonable limits on [ ] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). On the other hand, the Confrontation Clause is violated where "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [ ] counsel been permitted to pursue his proposed line of cross-examination." Id. at 680.

Flournoy argues that the trial court improperly restricted his cross-examination on two topics: (1) "whether Ronald Ashby realized he faced a life sentence in prison for his admitted shooting of Shawniebird, and thus had a motive to cooperate with the police and implicate Flournoy"; and (2) "whether the four witnesses discussed the crime on the way to the hospital, and thus agreed to falsely implicate Flournoy." (Pet. Reply (Docket Entry # 15) at 5.) The court will address these topics in turn.

---

[7] The right of confrontation applies to both state and federal criminal proceedings. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986).

1. <u>Ashby's Awareness of Life Sentence</u>

"[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." <u>Van Arsdall</u>, 475 U.S. at 679. Thus, "[a] complete bar on examination into bias would impermissibly deny the jury information 'central to assessing [the witness's] credibility.'" <u>Henry v. Speckard</u>, 22 F.3d 1209, 1215 (2d Cir. 1994) (quoting <u>Van Arsdall</u>, 475 U.S. at 677). Once again, however, trial judges have "discretion to set limits on [such] cross-examination," <u>id.</u> at 1214, including where inquiry into the potential bias of a witness would be "repetitive or only marginally relevant," <u>Van Arsdall</u>, 475 U.S. at 679. As long as "the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility," there is no violation of the Confrontation Clause. <u>United States v. Rosa</u>, 11 F.3d 315, 336 (2d Cir. 1993).

Here, defense counsel was permitted to cross-examine Ashby at length regarding whether Ashby knew that he could be charged for shooting Shawniebird and thus had a motive to cooperate with the prosecution against Flournoy. Specifically, counsel was able to establish that Ashby had two prior felony convictions, that he possessed a gun on the day of the shooting, that he knew that his possession of a gun was a felony, and that he knew that shooting someone was a felony. (Trial Tr. at 1108-11.) Counsel also asked Ashby whether he knew that he could be charged with another gun possession felony as a consequence of informing Detective Mosely about shooting Shawniebird, to which Ashby answered no. (<u>Id.</u> at 1110-11.)

Having permitted several questions regarding Ashby's knowledge of the potential consequences of shooting Shawniebird, the trial court could reasonably have concluded that additional questions regarding Ashby's knowledge of the precise *extent* of those consequences— i.e., a life sentence—would have been at best "only marginally relevant," <u>Van Arsdall</u>, 475 U.S.

10

at 679, particularly because there had been no evidence presented that Detective Mosely had offered Ashby any sort of promise in return for Ashby's cooperation. Because the jury was "in possession of facts sufficient to make a discriminating appraisal of [Ashby's] credibility" based on defense counsel's questions regarding Ashby's potential motive to testify, the Appellate Division reasonably concluded that there was no Confrontation Clause violation. Rosa, 11 F.3d at 336 (internal quotation marks omitted); cf. United States v. Estrada, 430 F.3d 606, 621 (2d Cir. 2005) (where defense counsel was permitted to present "significant evidence bearing on the cooperating witness' credibility," including questions about their cooperation agreements and evidence of their criminal records, "the marginal impact of evidence relating to the cooperating witness' specific offenses of conviction could not have given a reasonable jury a significantly different impression of the witness' credibility").

2. Conspiracy to Falsely Implicate Flournoy

Flournoy also argues that his right of cross-examination was violated because the trial court improperly restricted defense counsel's questions regarding "whether the four witnesses discussed the crime on the way to the hospital, and thus agreed to falsely implicate Flournoy."[8] (Pet. Reply at 5.) The court disagrees.

As Flournoy points out, "shortly after the crime all four of the witnesses drove together to the hospital, in the same vehicle." (Id. at 7.) Although Ashby denied that the four witnesses discussed the crime, Coleman suggested at her cross-examination that the four witnesses did in

---

[8] Neither Respondent nor Judge Bloom addressed this issue. Flournoy's Petition does not address the issue specifically but rather more broadly asserts that "the trial court impermissibly restrict[ed] his cross-examination." (Pet. ¶ 2.) Flournoy did, however, raise the issue on direct appeal to the Appellate Division (see Br. for Def.-Appellant of Oct. 1, 2002 (Docket Entry # 11)), and again in his reply in support of the instant Petition (see Pet. Reply at 5-8).

11

fact have a discussion about the identity of the shooter. (Id.) However, the trial court refused, on hearsay grounds, to permit defense counsel to ask Coleman about the details of the conversation:

> Q. Mr. [sic] Coleman, was there any conversation between you and either Ronald Ashby or Monique Ashby about who shot at them?
> MS. DOWELL [of the prosecution]: Objection.
> THE COURT: She can answer that question.
> A. Yeah.
> Q. Did he tell you who shot at them?
> MS. DOWELL: I'm going to object
> THE COURT: I'll sustain the objection.
> Q. Did Monique Ashby tell you?
> MS. DOWELL: Objection
> THE COURT: Sustained.

(Trial Tr. at 1235-36.)

On direct appeal, Flournoy argued that the trial court's preclusion of defense counsel's questioning was erroneous because Coleman's statements about the discussion in the car were "offered not for their truth, but to establish that they were made," and were therefore not hearsay.[9] (Br. for Def.-Appellant of Oct. 1, 2002 (Docket Entry # 11), at 37.) Flournoy argued that preclusion of the testimony violated the Confrontation Clause because it "deprived [Flournoy] of evidence supporting his claim that the four [witnesses] fabricated consistent stories." (Id.) The Appellate Division rejected his argument. See Flournoy, 303 A.D.2d at 762.

The problem with Flournoy's argument is that he made it for the first time on direct appeal and did not inform the trial court of the importance of defense counsel's attempted questions. In Jones v. Berry, 880 F.2d 670 (2d Cir. 1989), the Second Circuit explained:

> Since the trial court has discretion to limit cross-examination, a party whose prospective questioning is threatened with curtailment should make all reasonable efforts to alert the court to the relevance and importance of the proposed questions. Unless clearly barred by the trial court, the party should make an offer of proof on the record. Such an offer has the twofold benefit of (a) allowing the trial court to make its decision on a fully informed basis and (b) allowing the

---

[9] Under New York law, "[t]estimony offered not for the truth of its content but to evidence the fact that the statement was made is not hearsay." People v. Davis, 58 N.Y.2d 1102, 1103 (1983).

12

> reviewing court to make a reasoned evaluation of the impact of the trial court's decision. The latter consideration is of especial importance where, as here [on review of a Confrontation Clause claim in a habeas petition], an erroneous ruling must be assessed in light of its prejudicial effect.

Id. at 673. In United States v. Whitten, 610 F.3d 168 (2d Cir. 2010), the Second Circuit reaffirmed Jones and held that a trial court did not commit error by precluding defense counsel's questioning of a witness because, at trial, defense counsel "failed to adduce the good faith basis for the precluded questions or explain the significance of the witness's potential answers, and did not request a sidebar conference to argue any basis upon which the district court should have permitted this line of questioning." Id. at 183 (citing Jones, 880 F.2d at 673). Even though there *was* in fact "a good faith basis for [the] precluded questions," the court found no error because the trial court was "not made aware of" that basis, particularly because "the precluded questions represented a wholly new departure" from the defense's theory of the case up to that point. Id.

Flournoy did not argue at trial that Coleman's statements were being offered to support a theory of collusion rather than for their truth. Indeed, Flournoy points to no part of the record in which he argued that the four witnesses conspired on the way to the hospital to falsely implicate him. Thus, the trial judge had no reason to believe that defense counsel's questions were intended to support such a theory. The preclusion of these questions was therefore within the trial court's wide discretion to limit cross-examination, see Van Arsdall, 475 U.S. at 679, Whitten, 610 F.3d at 183, Jones, 880 F.2d at 673, and the Appellate Division reasonably concluded that Flournoy was not denied his right of confrontation.

**B.    Admission of Detective Mosely's Testimony**

Flournoy argues that he was denied his rights under the Fifth Amendment Due Process Clause and the Sixth Amendment Confrontation Clause when the trial court permitted the prosecution to introduce hearsay testimony from Detective Mosely. (Pet. ¶ 2.) He is incorrect.

13

During Detective Mosely's direct examination, over defense counsel's repeated objections, the Detective recounted what Ronald Smith had told her on the night of the shooting, including that Smith identified Flournoy as one of the two shooters, provided Flournoy's nickname ("Casino Mike"), described Flournoy's appearance and clothing, and identified the type of weapon Flournoy had that night. (Trial Tr. at 240-42.) The court permitted the testimony and denied Flournoy's motion for a mistrial (id. at 249-50), but instructed the jury that Detective Mosely's testimony was "not to be taken for the truth of any of the statements asserted but [ ] merely to provide background information that the detective had at the time"[10] (id. at 252-53). Six days later in the trial, Smith testified as to what he had told Detective Mosely on the night of the shooting. (Id. at 497-501.)

On direct appeal, Flournoy argued that Detective Mosely's testimony was inadmissible hearsay that bolstered Smith's statements, and that its admission violated his rights under both the Due Process Clause and the Confrontation Clause. The Appellate Division held that the testimony "was properly admitted as background information to explain the events that led to the defendant's arrest," and that the trial court's limiting instruction "effectively eliminated any risk of prejudice to the defendant." Flournoy, 303 A.D.2d at 762. The Appellate Division therefore did not reach Flournoy's constitutional arguments, and this court will address them de novo.

1. Due Process Clause

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). Rather, petitioners bear a "heavy burden" to prevail on

---

[10] Under New York law, a trial court may admit an out-of-court statement "not for its truth, but to provide background information as to how and why the police pursued and confronted [a] defendant." People v. Tosca, 98 N.Y.2d 660, 661 (2002).

14

a habeas petition based on an erroneous evidentiary ruling. Aponte v. Scully, 740 F. Supp. 153, 159 (E.D.N.Y. 1990). An erroneous evidentiary ruling violates the Fifth Amendment—and a writ of habeas corpus may issue—only "where the petitioner can show that the error deprived him of a fundamentally fair trial." Taylor, 708 F.2d at 891; see also Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998), abrogated on other grounds by Perry v. New Hampshire, 132 S. Ct. 716 (2012) (quoting Downling v. United States, 493 U.S. 342, 352 (1990)). "To constitute a denial of due process under this standard, the erroneously admitted evidence must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Kotler v. Woods, 620 F. Supp. 2d 366, 392 (E.D.N.Y. 2009) (internal quotation marks omitted) (quoting Dunnigan, 137 F.3d at 125); see also Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (erroneously admitted evidence must be "crucial, critical, [or] highly significant" to violate the Due Process Clause).

Here, the admission of Detective Mosely's testimony, even if erroneous, did not deprive Flournoy of a fundamentally fair trial. Given that Smith himself identified Flournoy at trial—in addition to three other eyewitnesses—the court finds it highly unlikely that Detective Mosely's testimony describing Smith's account of the shooting would have "provide[d] a basis for conviction or [ ] remove[d] a reasonable doubt that would have existed on the record without it."[11] Dunnigan, 137 F.3d at 125. That likelihood was further reduced—if not eliminated—by

---

[11] Flournoy suggests that "Mosely's testimony improperly bolstered Smith's testimony and his identification of Flournoy." (Pet. Reply at 17.) But "[t]he rule forbidding 'bolstering' is a state law standard, and a claim that a witness's testimony constituted improper bolstering does not state a federal constitutional claim cognizable on habeas corpus review." Kanani v. Phillips, No. 03-CV-25434 (PKC) (AJP), 2004 WL 2296128, at *21 (S.D.N.Y.

the trial court's prompt instruction to the jury that Detective Mosely's statements were not to be taken for their truth but as background information. (Trial Tr. at 252-53.) Cf. Greer v. Miller, 483 U.S. 756, 767 n.8 (1987) (jury is normally presumed to follow a court's instructions "unless there is an overwhelming probability that the jury will be unable to [do so] and a strong likelihood that the effect of the evidence would be devastating to the defendant" (internal quotation marks and citation omitted)). Thus, the admission of Detective Mosely's testimony did not violate Flournoy's Fifth Amendment rights.

### 2. Confrontation Clause

Flournoy also argues that Detective Mosely's testimony regarding Smith's out-of-court statements violated his rights under the Confrontation Clause. (Pet. ¶ 2.) But because Smith testified at trial, Flournoy had an opportunity to cross-examine him. Thus, no violation of the Confrontation Clause occurred.[12] See Aponte, 740 F. Supp. at 159 (holding that no violation of the Confrontation Clause occurred by the admission of hearsay testimony because the alleged hearsay declarant "was also a witness at trial," and the "petitioner had the opportunity to confront [the hearsay declarant] and question her about the alleged hearsay statement" (citing United States v. Owens, 484 U.S. 554 (1988)).

### C. Ineffective Assistance of Counsel

Finally, Flournoy argues that his trial counsel was ineffective for failing to move to suppress Monique's lineup identification, which Flournoy alleges was conducted in violation of

---

Oct. 13, 2004) (citing cases). In any event, the court does not find that any "bolstering" of Smith's testimony by Detective Mosely deprived Flournoy of a fundamentally fair trial.

[12] In his objections to the R&R, Flournoy cites United States v. Gomez, 617 F.3d 97 (2d Cir. 2010), for the proposition that "the Second Circuit has held that lower Courts cannot circumvent the confrontation clause by introducing the same substantive testimony as background exception to the hearsay rule, . . . even when the witnesses are physically there for cross-examination." (Objections at 6.) Flournoy mischaracterizes Gomez; in that case, the court held that the defendant's conformation rights were violated when a police officer testified regarding out-of-court statements of a person who had *not* been produced at trial. See 617 F.3d at 97.

16

his New York State right to counsel. (Pet. ¶ 2.) The Appellate Division rejected this claim on the merits. Flournoy, 56 A.D.3d at 683. The court concludes that this decision was not contrary to, or an unreasonable application of, clearly established Federal law.

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390. In Strickland, the Supreme Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel is violated. Under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688; see also id. at 689 (noting the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Second, under Strickland's "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Establishing ineffective assistance is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citation omitted)).

Flournoy has not demonstrated that trial counsel's failure to move to suppress the lineup identification "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Flournoy is correct that his New York State right to counsel had attached at the time of his pre-arraignment lineup because he was already represented by counsel. See People v. Mitchell,

2 N.Y.3d 272, 274 (2004) ("Even before the commencement of formal proceedings, [ ] the right to counsel at an investigatory lineup will attach . . . when counsel has actually entered the matter under investigation."); People v. LaClere, 76 N.Y.2d 670, 672-73 (1990).[13] But New York State case law suggests that, at least as a general rule, *notifying* counsel about an impending lineup is sufficient to satisfy a represented defendant's right to counsel. See Mitchell, 2 N.Y.2d at 274 ("Once the right to counsel has been triggered, the police may not proceed with the lineup without at least *apprising* the defendant's lawyer of the situation and affording the lawyer a reasonable opportunity to appear." (emphasis added)); LaClere, 76 N.Y.2d at 672-74 ("Once activated, . . . the right [to counsel] incorporates a requirement that defense counsel be *notified* of an impending investigatory lineup, if possible, and that counsel be afforded a reasonable opportunity to attend. Prompt notification to counsel . . . would have been a feasible and reasonable accommodation and satisfaction of defendant's right in this regard." (emphasis added)); People v. Coates, 74 N.Y.2d 244, 249 (1989) ("[W]hen the police are aware that a criminal defendant is represented by counsel and the defendant explicitly requests the assistance of his attorney, the police may not proceed with the lineup without at least *apprising* the defendant's lawyer." (emphasis added)); People v. Cummings, 288 A.D.2d 234, 234 (N.Y. App. Div. 2001) (holding that "because defense counsel was made aware that the lineup was about to begin, . . . defendant was not deprived of his right to counsel"); People v. Jones, 223 A.D.2d 375, 375-76 (N.Y. App. Div. 1996) (where "counsel had ample advance notice of [a] lineup, but expressed no interest in attending . . . , there was no denial of defendant's right to counsel"); People v. McRae, 195 A.D.2d 180, 187 (N.Y. App. Div. 1994) ("[E]ven where the right to

---

[13] Judge Bloom concluded that Flournoy's right to counsel under *federal* law had not attached at the time of the lineup. (See R&R at 9-10.) What is important here, however, is Flournoy's New York State right to counsel at the lineup, because Flournoy argues that his trial counsel was ineffective for failing to move to suppress the lineup identification obtained in violation of that state (not federal) right.

counsel for preaccusatory lineup purposes has 27 attached, the police are merely required to notify counsel of [the] impending lineup.").

Flournoy does not dispute that his trial counsel was notified about the impending lineup and simply declined to attend. (See Mintz Ex. at 11.) Trial counsel therefore had reasonable grounds to believe that the lineup identification was not obtained in violation of Flournoy's state right to counsel, and his failure to move to suppress that identification did not "f[a]ll below an objective standard of reasonableness."[14] Strickland, 466 U.S. at 688. There is no need to address Strickland's prejudice prong. Accordingly, the Appellate Division's rejection of Flournoy's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established Federal law.

## IV.  CONCLUSION

For the reasons set forth above, Flournoy's Petition for Writ of Habeas Corpus is DENIED. Because Flournoy has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
April 25, 2012

S/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge

---

[14] The Appellate Division concluded that Flournoy was indeed deprived of his state right to counsel at the lineup, but that this error was harmless and that, in any event, Flournoy was not denied effective assistance of counsel. Flournoy, 56 A.D.2d at 683. The Appellate Division did not explain the basis for its conclusion that Flournoy was denied his state right to counsel at the lineup, and it is unclear how the Appellate Division's conclusion coheres with the case law discussed above. Regardless, this conclusion does not affect the court's analysis under Strickland's performance prong. Although the court surely does not disturb the Appellate Division's interpretation of New York State law as applied to Flournoy's case, the court has no difficulty concluding that, given the case law cited above, it would not have been *unreasonable* for trial counsel to determine that no violation of Flournoy's state right to counsel occurred.

19